JOURNAL ENTRY and OPINION
In State v. Qunnie, Cuyahoga County Court of Common Pleas Case No. CR-345622, Qunnie was convicted of aggravated murder with a firearm specification, aggravated burglary with a firearm specification, and aggravated robbery with a firearm specification. This court affirmed that judgment in State v. Quinnie (July 9, 1998), Cuyahoga App. No. 72580, unreported. The Supreme Court of Ohio dismissed Qunnie's appeal for the reason that no substantial constitutional question existed and overruled his motion for leave to appeal. State v. Quinnie (1998), 84 Ohio St.3d 1433
[Supreme Court of Ohio Case No. 98-1816].
Qunnie asserts that he was denied the effective assistance of appellate counsel. We deny the application for reopening and, as required by App.R. 26 (B) (6), the reasons for our denial follow.
Initially, we note that App.R. 26 (B) (1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26 (B) (2) (b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
This court's decision affirming Qunnie's conviction was journalized on July 20, 1998. The application was filed on January 7, 2000, and the supplemental application was filed on May 12, 2000, clearly in excess of the ninety-day limit.
Qunnie states that the application was untimely "because he is a layman at law and unfamilar [sic] with the time limits imposed." Application, at 2. Additionally, he represents that he was unable to secure the appointment of counsel, the legal librarian of the Southern Ohio Correctional Facility twice lost or misplaced his papers, and his materials were removed to another institution when a legal service worker was transferred. He also complains that he did not receive copies of case law and "legal papers" for three weeks after requesting them and that he was transferred to another institution. Furthermore, he asserts that "the institution in which he was confined failed to provide appellant meaningful access to legal materials and legal services" and that the "Columbus Public Defenders office" told him that there would be a delay in reviewing his case due to a transfer of an attorney to other responsibilities. Application at 2.
In State v. Kaszas (Sept. 21, 1998), Cuyahoga App. Nos. 72546 and 72547, unreported, reopening disallowed (Aug. 14, 2000), Motion No. 16752, at 2-3, this court observed:
 In an affidavit accompanying the request for reopening, Kaszas avers that the policies and procedures of the prison that limit access to the law library prevented him from filing a timely application. Prison riots, lockdowns and other library limitations, however, have repeatedly been rejected as constituting "good cause" for untimely filings. State v. Oden (1996), 74 Ohio St.3d 234, 658 N.E.2d 273; State v. Cloud, 1995 Ohio App. LEXIS 4331 (Sept. 28, 1995), Cuyahoga App. No. 68439, unreported, reopening disallowed (Oct. 8, 1996), Motion No. 73557; State v. Coleman, 118 Ohio App.3d 522, 693 N.E.2d 825 (1997), reopening disallowed (June 30, 1998), Motion No. 93796; State v. Larson (Aug. 13, 1996), Cuyahoga App. No. 63001, unreported, reopening disallowed (Aug. 13, 1996), Motion No. 73462; State v. Travis,
1990 Ohio App. LEXIS 1356 (Apr. 5, 1990), Cuyahoga App. No. 56825, unreported, reopening disallowed (Nov. 2, 1994), Motion No. 51073. Thus the application for reopening is denied as untimely filed without good cause.
Likewise, we must conclude that Qunnie has not established good cause for the untimely filing of this application. His failure to demonstrate good cause is a sufficient basis for denying the application for reopening.
Additionally, Qunnie's affidavit accompanying the application is not sufficient to comply with App.R. 26 (B) (2), which provides, in part:
 An application for reopening shall contain all of the following:
* * *
 (d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B) (2) (c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record * * *.
The "Verification" accompanying the application merely states "that the foregoing statements are well and truly made to the best of his knowledge, belief and memory." In State v. Johnson (Dec. 14, 1998), Cuyahoga App. No. 72541, unreported, reopening disallowed (May 27, 1999), Motion No. 4430, appeal dismissed (1999), 86 Ohio St.3d 1464,715 N.E.2d 566, we held that the affidavit of an attorney "which only swears to the truth of allegations contained in an application for reopening does not comply with the requirements of App.R. 26 (B) (2) (d). State v. Franklin (1995), 72 Ohio St.3d 372, 650 N.E.2d 447; Statev. Parker (Nov. 24, 1997), Cuyahoga App. No. 71260, unreported, reopening disallowed (June 22, 1998), Motion No. 91891." Id. at 5. See State v.Towns (Oct. 23, 1997), Cuyahoga App. No. 71244, unreported, reopening disallowed (May 4, 2000), Motion No. 6308, at 4-5 (affidavit of applicant not sufficient — "facts contained in foregoing Application for Re-Opening are true correct to the best of my knowledge and belief").
Likewise, the operative portion of his lawyer's affidavit in support of the supplemental application[1] is not sufficient. Counsel averred:
 Affiant states that in his professional opinion the errors enumerated in the application for reopening should have been presented in the original appeal; that these issues were apparent form [sic] a reading of the record in this case including the transcript of proceedings; that by virtue of the omission to present these claims defendant was denied the effective assistance of counsel on appeal and that his appeal was prejudiced by reason of the omission to present these claims.
Supplemental Application, Affidavit, par. 3. This language, almost verbatim to that which this court held in Johnson, supra, at 6-7, is not sufficient to constitute a sworn statement.
We must also hold in this case that neither the affidavit of Qunnie nor the affidavit of his lawyer sets forth "the basis for the claim that the appellate lawyer's representation was deficient with respect to the assignments of error or arguments raised * * * and the manner in which the deficiency prejudicially affected the outcome of the appeal * * *." App.R. 26 (B) (2) (d). Qunnie's failure to comply with App.R. 26 (B) (2) (d) is a sufficient basis for denying the application for reopening.
The request for reopening is also barred by res judicata.
 The principles of res judicata may be applied to bar the further litigation in a criminal case of issues which were raised previously or could have been raised previously in an appeal. See generally State v. Perry
(1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. Claims of ineffective assistance of appellate counsel in an application for reopening may be barred by res judicata unless circumstances render the application of the doctrine unjust. State v. Murnahan (1992), 63 Ohio St.3d 60, 66, 584 N.E.2d 1204.
State v. Williams (Mar. 4, 1991), Cuyahoga App. No. 57988, unreported, reopening disallowed (Aug. 15, 1994), Motion No. 52164.
Qunnie filed a pro se appeal of this court's decision affirming his conviction to the Supreme Court of Ohio. As noted above, the Supreme Court dismissed his appeal in State v. Quinnie (1998), 84 Ohio St.3d 1433
[Supreme Court of Ohio Case No. 98-1816]. "[T]he applicant possessed a prior opportunity to raise and argue the claim of ineffective assistance of appellate counsel through an appeal to the Supreme Court of Ohio. * * * Since the issue of ineffective assistance [of] appellate counsel was raised or could have been raised on appeal to the Supreme Court of Ohio,res judicata now bars any further review of the claim." State v. Bluford
(Dec. 9, 1999), Cuyahoga App. No. 75228, unreported, reopening disallowed (May 31, 2000), Motion No. 15241, at 2, appeal dismissed (2000),89 Ohio St.3d 1488, ___ N.E.2d ___. See, also, State v. Blackmon (July 18, 1985), Cuyahoga App. No. 48787, unreported, reopening disallowed (Oct. 25, 2000), Motion No. 18768, at 3-4. Furthermore, we find that the application of res judicata in this case is just. Any arguments made in the application for reopening could have been made in Qunnie's appeal to the Supreme Court of Ohio.
We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that Qunnie has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26 (B)(5). InState v. Spivey (1998), 84 Ohio St.3d 24, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26 (B) (5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.
Id. at 25. Qunnie cannot satisfy both prongs of the Strickland test. We must, therefore, deny the application on the merits.
Qunnie complains that his appellate lawyer was ineffective for failing to assign as error that his trial lawyer failed to call a witness. Yet, this complaint necessarily presents matters outside the record and does not establish a ground for relief. State v. Buehler (Jan. 29, 1987), Cuyahoga App. No. 51522, unreported, reopening disallowed (Mar. 27, 1998), Motion No. 88009, at 5.
He also contends that his appellate lawyer was ineffective for failing to assign as error that his trial lawyer failed to ask for "mere presence instructions do [sic] to the fact that he was never proven, beyond a reasonable doubt, to have entered the home of the deceased by the prosecution whom only alleges during trial that he was more or less that of a look out." Application, at 5.
 Here, the evidence in the record before us demonstrates that Quinnie joined Litrell Chapman and Willis McNeal at Chapman's father's house, accepted a black overcoat to wear during the crime, provided his sawed-off shotgun to McNeal to be used during the crime, and rode to David White's apartment with Chapman and McNeal at 3:00 A.M. on the morning of May 30, 1996. He was present when Chapman unscrewed the light bulb from a light fixture over the apartment door, and allegedly remained outside while they kicked in the door looking for money. After hearing a gunshot, he returned to White's apartment and saw White's feet in the bedroom doorway; Quinnie then fled with McNeal, saw McNeal dispose of the sawed-off shotgun, and climbed over a fence to retrieve it before escaping with McNeal in a vehicle driven by Chapman's younger brother, Gartrell Chapman. Following their escape, the trio met briefly at Chapman's father's house, where Chapman admitted shooting White; then Quinnie and McNeal returned to the scene and were stopped by police but not arrested. At no time did Quinnie, who assertedly abandoned the venture, act as if he withdrew with intent to renounce his participation.
Quinnie, supra, at 10-11 (O'Donnell, J., concurring)
As noted above, res judicata bars further review of issues previously litigated. On direct appeal, this court rejected Qunnie's sole assignment of error challenging the sufficiency of the evidence against him. Resjudicata, therefore, prohibits further review of his argument that the evidence was insufficient. See, also, State v. Dempsey, (Nov. 20, 1997), Cuyahoga App. No. 71479, unreported (affirming the judge's refusal to give "mere presence" instruction — where defendant was charged with aggravated arson and burglary — because that instruction would be confusing to jury in light of elements of burglary), reversed on other grounds (1998), 83 Ohio St.3d 107, 698 N.E.2d 977. Similarly, Qunnie's contention that the State improperly characterized him as a "lookout" during opening statements fails because this court determined on direct appeal that the evidence was sufficient to conclude that Qunnie did act as a look-out. Quinnie, supra, at 7.
Likewise, he complains about what he describes as prosecutorial misconduct with regard to: the prosecution's comment that his testimony at trial was rehearsed; the prosecution's references to the co-defendants; and the prosecution's withholding of photographs of foot prints. Qunnie does not present any basis for concluding that there would have been a reasonable probability of success if his appellate lawyer had asserted any of these matters.
He contends that the judge's instruction on aiding and abetting was erroneous with respect to the element of "purposely" committing the burglary and robbery. Yet, the judge specifically instructed the jury regarding "purposeful intent," both initially and in response to the jury's question during deliberations. TR. 747, 11.20-21; 754, 11.17-18. Furthermore, Qunnie does not cite any authority indicating that the specific instruction by the judge is error. We cannot, therefore, conclude that there would have been a reasonable probability of success if his appellate lawyer had asserted this issue.
The assignments of error in Qunnie's proposed supplemental application also do not provide a sufficient basis for reopening. The first assignment of error challenges the propriety of the judge's instruction on aiding and abetting on essentially the same ground as Qunnie.
In the supplemental second and third assignments of error, he contends that the judge erred in instructing the jury regarding common purpose and presumption of the use of a gun, respectively. Nevertheless, he does not indicate any point in the record in which there was an objection to any of the jury instructions that are the subject of the first, second and third assignments of error. "Thus if an error had been committed, such error had been waived and could only be reviewed on a plain error analysis. Such an argument could succeed only if there was a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332." State v. Taylor (Oct. 17, 1996), Cuyahoga App. No. 69843, unreported, reopening disallowed (Oct. 20, 1999), Motion No. 5439, at 16, appeal dismissed (2000), 88 Ohio St.3d 1413, 723 N.E.2d 119. In light of this court's extensive review of the record on direct appeal, we cannot conclude that the issues raised by his manifest a clear miscarriage of justice. "We find defendant was a full participant in the crimes he was charged with and after viewing the evidence in a light most favorable to the prosecution, it is clear any rational trier of fact could have found the essential elements of aggravated murder, robbery, and burglary proven beyond a reasonable doubt." Quinnie, supra, at 8.
The supplemental fourth assignment of error questions the propriety of a revised jury instruction regarding aiding and abetting. His lawyer contends that the judge's instruction to the jury regarding soliciting or procuring another to commit the offense as well as conspiring with another to commit the offense effected an impermissible amendment of the indictment. Soliciting or procuring another as well as conspiring are expressly within the definition of complicity. R.C. 2923.03 (A) (1) and (3). Furthermore, the revised instruction is a product of a colloquy initiated by his lawyer to ensure a proper instruction regarding purpose. TR. 744-746. Additionally, he has not identified any objection to this instruction. As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
In his fifth assignment of error, counsel contends that a police detective gave impermissible opinion testimony because he testified that, based on the statements of two witnesses, he obtained warrants for the arrest of Qunnie and Litrell Chapman. His reliance on State v. Webb
(1994), 70 Ohio St.3d 325, 638 N.E.2d 1023, cited with approval in Statev. Johnson (2000), 88 Ohio St.3d 95, 111, 723 N.E.2d 1054, 1069, is, however, misplaced. In those cases, the officer expressed an opinion whether a specific person other that the defendant (in Webb) or any other person (in Johnson) was involved in the crime. In this case, the officer merely stated the steps taken in the investigation. Counsel has not, therefore, demonstrated a reasonable probability that Qunnie would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
In the supplemental sixth assignment of error, he contends that permitting Clinton Robinson to testify regarding a conversation Robinson heard among Qunnie, Litrell Chapman and Willis McNeal was error. In support of this argument, he cites State v. Madrigal (2000),87 Ohio St.3d 378, 721 N.E.2d 52 (admission into evidence of accomplice's out-of-court statements violated applicant's rights under The Confrontation Clause of Sixth Amendment to United States Constitution but was harmless error). In State v. Dukes (June 29, 1998), Cuyahoga App. No. 71397, unreported, reopening disallowed (Dec. 9, 1998), Motion No. 99119, at 7, et seq., this court held that a lawyer is not responsible for accurately predicting developments in the law. Any authority issued after this court determined Qunnie's direct appeal would not, therefore, provide a sufficient basis for concluding that his appellate lawyer was ineffective. As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
In the supplemental seventh assignment of error, he contends that his trial lawyer was ineffective for permitting him to testify and be cross-examined regarding his convictions for drug trafficking.
 Certainly, trial counsel was free to pursue this strategy. It is well established that courts will not second-guess counsel. See, e.g., State v. Mitchell (Apr. 3, 1997), Cuyahoga App. No. 70821, unreported, reopening disallowed (Feb. 24, 1998), Motion No. 84988 at 6-7.
State v. Simms (Sept. 19, 1996), Cuyahoga App. No. 69314, unreported, reopening disallowed (Aug. 13, 1998), Motion No. 89037, at 8-9, appeal dismissed (1998), 84 Ohio St.3d 1409, 701 N.E.2d 1019. Although he cites authority prohibiting testimony on a defendant's drug use, Qunnie's testimony — including testimony on direct examination elicited by his lawyer — was limited to his convictions for drug trafficking.
As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
In the supplemental eighth assignment of error, he contends that he was improperly cross-examined regarding his failure to come forward for six months after the death of David White. The record reflects that his trial lawyer did not object to this line of questioning. As noted above, in addition to the issue of waiver, we will not second-guess the lawyer's strategy. As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if appellate counsel had raised this assignment of error.
In the supplemental ninth assignment of error, Qunnie contends that his statements to police should have been suppressed. At the time police took two statements from him (which were given approximately eight days apart), Qunnie was in prison and had been returned to Cleveland. Although he cites cases involving individuals who were not in custody prior to questioning by police, Qunnie was under the custody of the state at the time of his questioning. As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
In the supplemental tenth assignment of error, he contends that the judge erred by responding to two jury questions without Qunnie or his lawyer present. "Although a judge should not indulge in ex parte
communications with the jury, such communications are not necessarily prejudicial. State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264;State v. Abrams (1974), 39 Ohio St.2d 53, 313 N.E.2d 823." State v.Starr (Apr. 5, 1990), Cuyahoga App. No. 56819, unreported, reopening disallowed (Nov. 3, 1993), Motion No. 35321, at 21, affirmed (1994),68 Ohio St.3d 1463, 627 N.E.2d 1003. The Starr court noted that the instruction was proper, inferring prejudice "requires speculation upon speculation," and any error was harmless. Id. at 22. Qunnie has not argued, much less demonstrated, that the judge's response to jury questions was prejudicial. As a consequence, he has not demonstrated a reasonable probability that he would have been successful on direct appeal if his appellate lawyer had raised this assignment of error.
Qunnie has not met the standard for reopening. Accordingly, the application for reopening is denied.
 ________________________________ ANNE L. KILBANE, PRESIDING JUDGE
 JAMES D. SWEENEY, J. and JAMES M. PORTER, J. CONCUR
[1] App.R. 26 (B) (4) provides that applications for reopening "shall not exceed ten pages." Qunnie has filed with the clerk of this court a ten-page application for reopening pro se, and new counsel has filed a motion for leave to file supplemental application as well as the supplemental application, which is fourteen pages long. By separate entry, we have denied new counsel's motion for leave to file supplemental application and stricken the supplemental application. See, e.g., Statev. Kaszas (Apr. 5, 2000), Cuyahoga App. Nos. 72546 and 72547, unreported. [Motion No. 15581] (striking pages in application after page ten and granting leave to file conforming application). See, also, Statev. Stovall (Jan. 22, 1998), Cuyahoga App. No. 72149, unreported, reopening disallowed (Feb. 10, 1999), Motion No. 98564, at 4 (application plus supplement exceeded ten-page limit).